## 10488.  WHITE *v.* THE STATE.

"The law embraced in section 73 of the Penal Code does not qualify or limit the law of justifiable homicide as laid down in sections 70 and 71 of that code.  The section first mentioned applies exclusively to cases of self defense from danger to life arising during the progress of a fight wherein both parties had been at fault.  The other two sections are applicable when the homicide is committed in good faith to prevent the perpetration of any of the offenses mentioned in section 70, or under the fears of a reasonable man that such an offense will be perpetrated unless the person who is actually or apparently about to commit it be slain.  Instructions as to these two separate branches of law of justifiable homicide should not be so given as to confuse the one with the other."

(*a*)  "Where an erroneous rule of law is given to the jury on a material issue in the case, and is of such a nature as is calculated to mislead them, a new trial will be granted notwithstanding the correct rule may have been announced in other portions of the charge."

DECIDED JULY 22, 1919.

Conviction of manslaughter; from Butts superior court—Judge Searcy.  March 18, 1919.

*H. M. Fletcher,* for plaintiff in error.

*E. M. Owen, solicitor-general, W. E. Watkins,* contra.

BLOODWORTH, J.   Charlie White was indicted for murder and convicted of voluntary manslaughter, and, complaining of the over-ruling of the motion for new trial, has brought his case to this court for review.

The trial judge charged the jury in part as follows: "Justifiable homicide, so far as the definition is applicable to this case, is the killing of a human being in self-defense or defense of habitation or property, against one who manifestly intends or endeavors by violence or surprise to commit a felony on either.   If a person kill another in his defense it must appear that the danger was so urgent and pressing at the time of the killing that in order to save his own life the killing of the other was absolutely necessary; and it must appear also that the person killed was the assailant or that the slayer had really and in good faith endeavored to decline any further struggle before the mortal blow was given.   I charge you that the expression 'felony,' as used here, means an offense for which the offender if convicted would be liable to be punished by death or imprisonment in penitentiary.   The law provides that justifiable homicide is the killing of a human being in self-defense or in defense of habitation, property, or person against one who manifestly intends or endeavors by violence or surprise to commit a felony on either.   The bare fear of any of these offenses to prevent which the homicide is alleged to have been committed shall not be sufficient to justify the killing.   It must appear that the circumstances at the time were sufficient to excite the fears of a reasonable man, and that the party killing really acted under the influence of these fears and not in a spirit of revenge."

The first ground of the amendment to the motion for new trial complains that this charge is error for the reason hereinafter stated. In a note to this ground the trial judge says that section 73 of the Penal Code was given in charge at the request of counsel for the defendant.   This being true, the defendant could not complain that section 73 was given in charge, but he can complain that it was given in such connection as to confuse "the defense of justifiable homicide under the fears of a reasonable man, based upon the provisions of the two related sections 70 and 71 of the Criminal Code, with the defense of absolute necessity to kill in order to save one's life, which is contained in section 73 of said Code;" and this is the reason assigned why the charge is erroneous.   Under repeated

rulings of our Supreme Court we think this point is well taken, even though in our opinion the facts demanded that section 73 be given in charge to the jury.

The first headnote of the decision in *Pugh* v. *State*, 114 *Ga.* 16 (39 S. E. 875), is as follows: "The law embraced in section 73 of the Penal Code does not qualify or limit the law of justifiable homicide as contained in sections 70 and 71. While the law embodied in sections 70 and 71, as well as that embodied in section 73, may both be properly given in the same case, the provisions of the different sections should not be charged in such a way as to leave the impression upon the jury that they are both applicable to the same state of facts." In *Franklin* v. *State,* 146 *Ga.* 42 (90 S. E. 481), Mr. Justice Beck said: "It was proper in this case to give §§ 70, 71 and 73 of the Penal Code in charge to the jury, but § 73 should not have been charged in such a way as to make it likely that the provisions of that section would be confused in the minds of the jury with the provisions of §§ 70 and 71. It is true that the judge told the jury that the provisions of § 73 were to be kept distinct from the provisions of sections 70 and 71, but that is not sufficient. How could a layman be expected to keep the provisions of § 73 and of the other sections referred to distinct, without instructions as to the case in which the principles of section 73 are applicable? In the case of *Pryer* v. *State,* 128 *Ga.* 28 (57 S. E. 93), it is said: 'We would suggest that it would avoid much confusion if, where it is proper to give in charge § 73 of the Penal Code, the presiding judge would give the jury some instruction as to cases in which it is applicable, instead of charging it immediately after sections 70 and 71, without any explanation.' Section 73 is applicable only in the cases of mutual combat, as has been repeatedly ruled, and the jury ought to be so informed in appropriate instructions; or at least the jury should be told in what cases the provisions of section 73 are applicable. Otherwise the inevitable tendency is to confuse that section with the provisions of sections 70 and 71, where all three of the sections are given. *Warrick* v. *State,* 125 *Ga.* 133, 141 (53 S. E. 1027)."

In *Ragland* v. *State,* 111 *Ga.* 216 (36 S. E. 684), Mr. Justice Lumpkin said: "It is justifiable homicide, under our law, for one to kill another who is manifestly intending or endeavoring by violence or surprise to commit a felony on his person; and this is

true without regard to the grade of felony; and it is not a correct proposition of law, that when one kills another to prevent the commission of a felony on his person, the danger must be so urgent and pressing at the time of the killing, that, in order to save his own life, the killing of the other was necessary. On the contrary, it is only necessary to be shown that the circumstances were sufficient to excite the fears of a reasonable man that such felony was about to be committed upon him, in order to justify the homicide. Otherwise, a woman who killed a man to prevent the rape of her person, or one who slew a burglar to prevent the burglary of his home, would not be justifiable. In neither of these cases was the life of the slayer involved, but in each a felony was about to be committed. A person in this State may kill another for other purposes than to save his own life and be justified, if he do so to prevent any felony from being committed on his habitation, person or property; his defense is complete when to a jury it appears that the circumstances were sufficient to excite the fears of a reasonable man that a felony was about to be committed, and that he killed to prevent its commission. The latter part of the charge as given applies only to cases of homicide where the parties had previously been engaged in mutual combat. *Powell* v. *State*, 101 *Ga.* 9 [29 S. E. 309, 65 Am. St. R. 277] ; *Stubbs* v. *State*, 110 *Ga.* 916 [36 S. E. 200]. It is doubtless true that the presiding judge recognized these distinctions, but, inasmuch as the two principles enunciated in his charge are directly coupled together without a distinction having been drawn, the jury might have understood, from the charge as set out in the ground of the motion, that while it was justifiable for one to kill another to prevent the commission of a felony on his person, it must at the same time appear that the danger was so urgent and pressing at the time of the killing that it was necessary for the slayer to take the life of the deceased, in order to save his own life. This is not and has never been the law." See also *White* v. *State*, 147 *Ga.* 378 (5), 383 (94 S. E. 222) ; *Pryer* v. *State*, 128 *Ga.* 28 (57 S. E. 93) ; *Smith* v. *State*, 119 *Ga.* 564 (3) (46 S. E. 846) ; *Jordan* v. *State*, 117 *Ga.* 405 (2) (43 S. E. 747) ; *Powell* v. *State*, 101 *Ga.* 11 (6), 22 (6-7), supra.

From the charge given in the instant case, the jury might have concluded that the provisions of sections 70 and 71 and of section 73 were applicable to the same state of facts. In *Nunn* v. *State*, 14

*Ga. App.* 699 (82 S. E. 58), Judge Roan says: "It is impossible to tell which portion of the charge the jury applied to the evidence when arriving at its verdict,—the law as laid down by section 73, read to them by the court without comment, or the latter part of the charge whereby the court seemingly recalled the instructions given on this section. For this reason the latter portion of the court's charge, while it is, correct law in the abstract, is in direct conflict with the letter of the law embodied in section 73 of the Penal Code, and it does not operate to modify the law as laid down in that section any more than the law as laid down in that section modifies the latter portion of the charge. It would be well for the trial judges, in giving in charge section 73 of the Penal Code where it is applicable, to instruct the jury, in immediate connection therewith, under what circumstances it is applicable. In this way such confusion can be avoided. See *Powell* v. *State,* 101 *Ga.* 23 (29 S. E. 309, 65 Am. St. R. 277) ; *Pugh* v. *State,* supra; *Warrick* v. *State,* 125 *Ga.* 141 (53 S. E. 1027) ; *Pryer* v. *State,* 128 *Ga.* 28 (57 S. E. 93) ; *Lightsy* v. *State,* 2 *Ga. App.* 442 (58 S. E. 686) ; *Holland* v. *State,* 3 *Ga. App.* 465 (60 S. E. 205) ; *McAllister* v. *State,* 7 *Ga. App.* 541 (67 S. E. 221)."

Even though the judge, after giving in charge to the jury erroneous instructions, did give to the jury a correct charge, he did not withdraw the erroneous charge or state to the jury that it was erroneous. "Where an erroneous instruction is given on a material issue, the error is not rendered harmless by a subsequent statement of the judge that he has given the correct rule in another part of his charge. He must make it plain and clear to the jury that the first instruction was incorrect and is expressly retracted, and that the subsequent statement is correct and is substituted for the incorrect one; and it must appear therefore that the jury could not have been misled or confused by the two inconsistent statements. *Pelham Mfg. Co.* v. *Powell,* 6 *Ga. App.* 309 (4) (64 S. E. 1116)." See *Mayor &c. of Madison* v. *Bearden,* 22 *Ga. App.* 378 (96 S. E. 572), and cases cited; *Central of Ga. Ry. Co.* v. *Deas,* 22 *Ga. App.* 428 (96 S. E. 267). The jury must take the whole charge as the law, and it is not for them to select one part to the exclusion of another, nor to decide whether one part cures or qualifies another, they being instructed so to do by the

judge." *Savannah, Florida & Western Ry. Co.* v. *Halcher,* 118 *Ga.* 273 (45 S. E. 239).

Because of this error in the charge we think a new trial should be ordered. On account of this direction it is unnecessary to consider other allegations of error.

*Judgment reversed. Stephens, J., concurs. Broyles, P. J., dissents.*

BROYLES, P. J., dissenting. The reason why it is generally reversible error for the court to charge sections 70, 71, and 73 of the Penal Code together, without proper explanation, is that the jury may be misled into thinking that even though the defendant may have killed the deceased under the fears of a reasonable man that a felony was about to be committed on his person, the killing would not be justifiable unless it appeared to him that the danger was so urgent and pressing at the time of the killing that, in order to save his own life, the killing of the other was absolutely necessary. In the instant case I do not see how the jury could have been so misled, for, after charging the above three code-sections (and all three were applicable), the jury were clearly and correctly instructed, several times, that if the circumstances were sufficient to excite the fears of a reasonable man that a felony was about to be committed on him, the killing would be justifiable and the defendant should be acquitted. Immediately after the excerpt from the charge complained of, the court charged as follows: "The fears of a person should be the fears of a reasonable man—one reasonably courageous, reasonably self-possessed,— not those of a coward. If the circumstances were sufficient to excite the fears of a reasonable man that a felony was about to be inflicted upon him, then the killing would be presumed to be the result of such fears and he would be justifiable. If the jury have a reasonable doubt as to whether the circumstances were sufficient to excite the fears of a reasonable man, then the killing would be justifiable. The killing is not justifiable because one feels that he has reason to fear that he will be injured without regard to the character of the injury some person is about to inflict upon him. If the assailant intended or endeavored to commit a misdemeanor or a trespass only upon the person, the killing of such person would be voluntary manslaughter. But if he intended to commit a felonious assault, then the killing would be

justifiable. If the circumstances are not such as to excite the
fears of a reasonable man that he is in any danger at all, and when
he is in no danger he shot and killed another with malice, then
such killing would be murder. If the circumstances were sufficient
to excite the fears of a reasonable man that an injury was about to
be inflicted upon him less than a felony, under those circumstances
such a killing would be voluntary manslaughter. When the cir-
cumstances are sufficient to excite the fears of a reasonable man
that a felony is about to be inflicted upon him, and under those
circumstances he kills another, then the killing would be justifiable.
In order to justify the killing on the ground that the accused acted
under the fears of a reasonable man that a felony was about to be
inflicted upon him, it must appear that there was real or apparent
danger sufficient to justify the belief that a felony was about to be
inflicted upon him. If the circumstances surrounding the defend-
ant at the time, as they appeared to him at that time, situated as
he was, were sufficient to excite the fears of a reasonable man that
there was real or apparent danger that a felony was about to be
inflicted upon him, and he acted under the influence of those fears,
and not in a spirit of revenge, and killed another, then such killing would be justifiable." And the very last part of the charge is
as follows: "If you do not believe he is guilty of either offense
[murder or voluntary manslaughter], or have reasonable doubt of
it, or if you find he was justified in doing whatever he did do, or
that he acted under the fear of a reasonable man that a felony was
about to be inflicted upon him, or if you have a reasonable doubt
of the guilt of the accused of either offense named, it would be
your duty to acquit him, and the form of your verdict would be
'We, the jury, find the defendant not guilty.'"

In my opinion, in the light of the entire charge, the excerpt
from the charge complained of did not mislead the jury into
thinking that if the accused killed the deceased under the fears
of a reasonable man that a felony was about to be committed upon
him, the killing would nevertheless not be justifiable unless it ap-
peared to him that the danger was so urgent and pressing that in
order to save his own life the killing of the other was absolutely
necessary. I think the judgment should be affirmed.