## 914.  HOLLAND *v.* THE STATE.

1. This case is controlled by the repeated rulings of the Supreme Court, that the law embraced in the Penal Code of 1895, § 73, does not qualify or limit the law of justifiable homicide as contained in sections 70 and 71, and that instructions as to these two separate branches of the law of justifiable homicide should not be so given as to confuse the one with the other, or tend to perplex the jury in making appropriate application of the law to the facts.

30

2. In no view of the evidence or the statement of the accused was the law of justifiable homicide in cases of mutual combat, as laid down in the Penal Code, § 73, applicable to this case, and the court erred in giving in charge that section.

3. Words, threats, and menaces, while they are in no case sufficient to arouse such a passion as will mitigate a homicide from murder to voluntary manslaughter, may, under some circumstances, be sufficient to arouse a reasonable fear in the mind of the slayer, and thereby afford a complete justification for the killing.

4. In charging section 70 of the Penal Code, the judge should explain to the jury the meaning of the technical word "felony," used therein.

5. The court in his instructions to the jury should be careful to guard against using abstract legal quotations and sententious judicial utterances in such manner as to make them misleading under the particular circumstances of the case.

Conviction of manslaughter, from Whitfield superior court— Judge Fite. December 2, 1907.

Argued January 14,—Decided January 27, 1908.

*W. E. Mann, G. G. Glenn, F. W. Copeland,* for plaintiff in error.
*Sam. P. Maddox, solicitor-general, W. C. Martin,* contra.

POWELL, J. 1, 2. The defendant was indicted for murder and convicted of voluntary manslaughter. For the same errors as are dealt with in the case of *Lightsy* v. *State, 2 Ga. App.* 442 (58 S. E. 686), a new trial must be granted in this case. Section 73 of the Penal Code was in no wise applicable, under the evidence, and, if applicable, should not have been charged in such juxtaposition with sections 70 and 71 as to leave the impression upon the minds of the jury that its principles were a limitation upon those of the other two sections. This question has been discussed too often and too lucidly by the Supreme Court, as well as by this court, to deserve further elaboration here. The court did, however, in this case interpolate into section 73, as he charged it, the words "or to prevent a felony being committed upon him." This in some degree mitigated the error, but did not entirely cure it. For even with this interpolation, the instruction as given is: "If a person kill another in his defense, it must appear that the danger was so urgent and pressing, at the time of the killing, that in order to save his own life, or to prevent a felony being committed on him, the killing of the other was *absolutely* necessary," etc. This entirely ignores the defendant's right to kill under an *apparent* necessity justified by reasonable fears.

3. According to the evidence, the deceased used toward the defendant opprobrious words, threats, and menaces, some of which at least, in connection with other acts of the deceased, might have been considered by the jury as sufficient to arouse reasonable fears in the defendant. The court charged the jury: "Provocation by words, threats, menaces, or contemptuous gestures shall in no case be sufficient to free the person killing from the guilt and crime of murder." This is a sound proposition, as applied to certain phases of the evidence; but thus left unlimited and unexplained, it must have tended to confuse the jury and to do the defendant an injustice. Such provocation alone is never sufficient to reduce the homicide from murder to manslaughter. Words, threats, menaces, and contemptuous gestures, sufficient only to produce anger and not to produce a reasonable justifying fear, are of no defensive value; and in a case where clearly the defendant's complete justification is nowise dependent on such circumstances, it is not reversible error to charge the literal words of the code, without further explanation. However, this phase of criminal law as codified is couched in such inapt language that in most cases the trial judge may safest run his pen through these words, when charging the manslaughter sections; for when the threats, menaces, and gestures, are such that under the particular circumstances a reasonable fear may probably have been incited thereby, to charge in the language of the code, without telling the jury that the principle applies only in the event they were not such as to arouse a reasonable fear, is error. *Cumming* v. *State,* 99 *Ga.* 662 (27 S. E. 177); *Johnson* v. *State,* 105 *Ga.* 665 (31 S. E. 399); *Clay* v. *State,* 124 *Ga.* 795 (53 S. E. 179).

4. In charging as to justification, the judge should have defined the word "felony." *Roberts* v. *State,* 114 *Ga.* 450 (3), (40 S. E. 297).

5. The judge, after charging section 71 upon the subject of reasonable fears, added, "The words 'fears of a reasonable man' do not mean the fears of a coward or a drunken man, but the fears of a reasonably courageous and sober man." Without adjudging this reversible error (see *Anderson* v. *State,* 117 *Ga.* 253 (43 S. E. 835)), yet, under the peculiar facts of this case, we may say that this sententious form of expression is not unlikely to mislead an average juror. The judge, of course, meant to convey the idea that

the circumstances relied on for justification on the theory of an apparent necessity to kill must be such that a reasonably courageous sober man, under similar circumstances, would entertain them; and that if the circumstances are not of this nature, they would not afford justification, though a coward or a drunk man might therefrom be made afraid. In this case it would be somewhat fairer to the defendant (who, according to some of the witnesses, was intoxicated) for the judge to say that a drunken man would not be authorized to act upon fears which a reasonably courageous sober man under the same circumstances would not have felt, but that even if he was intoxicated, he would be justified to act upon such fears if a reasonably courageous sober man in the same position would have experienced them. The conduct of the defendant, if he was drunk, is to be judged just as if he were sober. See, upon a cognate subject, *Rollestone* v. *Cassirer*, 3 *Ga. App.* 161 (59 S. E. 442).

Other errors are assigned, but we do not deem it necessary to decide the points made; for the rulings are of such a nature that they will not likely arise upon another trial.

*Judgment reversed.*